MICHIGAN STATE AFL-CIO v CIVIL SERVICE COMMISSION

Docket No. 113228. Submitted January 23, 1991, at Detroit. Decided October 21, 1991, at 9:10 A.M.

The Michigan State AFL-CIO, two persons in the state classified civil service, and several other labor unions that represent state civil servants brought an action in the Wayne Circuit Court against the Civil Service Commission and the State Personnel Director, seeking a declaratory judgment and an injunction against the enforcement of Civil Service Commission Rule 1-5.7, which prohibits civil servants from engaging in political activities during the hours they are on actual duty and defines "actual duty" to include those times during which civil servants are released from their regular workplace to engage in permitted union activities or business. The court, John H. Hausner, J., granted summary disposition for the plaintiffs, declaring Rule 1-5.7 invalid on the ground that it violates the Political Activities of Public Employees Act, MCL 15.401 *et seq.*; MSA 4.1702(1) *et seq.*, and permanently enjoining the defendants from enforcing Rule 1-5.7. The defendants appealed.

The Court of Appeals *held:*

1. The trial court correctly determined that the plaintiffs did not lack standing to sue. The plaintiffs sufficiently established that they had a substantial interest in, and would be adversely affected by, the enforcement of Civil Service Commission Rule 1-5.7.

2. The trial court erred in declaring that Rule 1-5.7 violates MCL 15.401 *et seq.*; MSA 4.1702(1) *et seq.* MCL 15.404; MSA 4.1702(4) provides that public employees are not to engage in political activities during those hours when they are being compensated for the performance of their duties as public employees. In this case, under the various collective bargaining agreements between the plaintiffs and the state, the release of a civil servant for participation in union activities during

REFERENCES

Am Jur 2d, Civil Service § 51; Labor and Labor Relations §§ 372, 419 *et seq.*

Union organization and activities of public employees. 31 ALR2d 1142.

working hours is considered part of the civil servant's duties for which compensation is paid. Thus, Rule 1-5.7 is consistent with, and does not violate, MCL 15.404; MSA 4.1702(4).

3. The plaintiffs' constitutional claims, which the trial court did not address in granting summary disposition, should be addressed on remand.

Reversed and remanded.

CIVIL SERVICE — POLITICAL ACTIVITIES.

Consistent with the Political Activities of Public Employees Act, the Civil Service Commission may prohibit a civil servant from engaging in political activities during those times that the civil servant, pursuant to the terms of a collective bargaining agreement, is released from the regular workplace for participation in union-related activities or business while continuing to be compensated by the state (MCL 15.404; MSA 4.1702[4], Civil Service Commission Rule 1-5.7).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs* and *Andrew Nickelhoff*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Deborah Anne Devine,* Assistant Attorney General, for the defendants.

Amici Curiae:

*Dykema Gossett* (by *Richard D. McLellan, William J. Perrone,* and *Cindy M. Wilder*), for the Michigan State Chamber of Commerce.

*Mark Brewer* (*Paul Denenfeld,* of Counsel), for the ACLU Fund of Michigan.

Before: GRIFFIN, P.J., and REILLY and T.M. BURNS,* JJ.

REILLY, J. Defendants appeal as of right from an

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

October 28, 1988, circuit court order that declared modified Civil Service Commission Rule 1-5.7 invalid, permanently enjoined defendants from enforcing it, and granted plaintiffs' motion for summary disposition under MCR 2.116(C)(10). In that same order, the circuit court denied defendants' motion for summary disposition under MCR 2.116(C)(1), (5), and (8). We reverse and remand.

This case involves the interpretation of Civil Service Rule (CSR) 1-5.7, as modified effective July 14, 1988, and consideration of its validity when applied to various union leave programs that involve partisan political activity.

Before July 14, 1988, CSR 1-5.7, relating to political activities, provided:

> 1-5.7 Prohibited During Work Hours. Activities permitted under sections 1-5.1 and 1-5.5 shall not be engaged in by a classified employee during the hours the employee is on actual duty.[1]

[1] Civil Service Commission Rules 1-5.1 through 1-5.5 provide:

1-5.1 Candidates for Public Office.—An employee in the classified service may become a candidate for nomination and election to any local elective office, partisan or non-partisan, without first obtaining a leave of absence.

1-5.1a An employee in the classified service may become a candidate for nomination and election to state office but shall request and shall receive a leave of absence without pay at the time of compliance with the candidacy filing requirements or sixty (60) days prior to the election in question, whichever date is closer to the election.

1-5.2 State Office Defined.—"State Office" in section 1-5.1a means full-time elective office in the Executive or Legislative Branch of State Government, Justice of the State Supreme Court, Judge of the Court of Appeals.

1-5.3 Leave of Absence for Primary Election.—An employee on required leave of absence for a primary election but not nominated in that election shall return from leave of absence immediately after the official canvass of votes.

1-5.3a An employee nominated in a primary election shall remain on leave of absence until the special or general election.

1-5.3b An employee nominated in a primary election who withdraws from the general or special election in accordance with applicable election law shall return from leave of absence immediately upon such withdrawal.

Effective July 14, 1988, the rule was amended by adding the following language:

> Actual duty includes the employee's scheduled work hours and overtime. Off duty includes all time outside scheduled work hours·and overtime, annual leave, unpaid leave of absence, lost time and leave granted to the employee to become a full time employee of an employee organization holding exclusive representation rights, pursuant to an approved collective bargaining agreement. For purposes of this rule, employees released from their regular state workplace for union activities, union business or any other employee organization purpose under any leave arrangement, including "annual leave buyback" provisions, shall be considered to be on actual duty, released by the employer to take part in union activities deemed to be in the best interests of the state and not including partisan political activity.

The modification was apparently adopted in response to a training seminar on election campaign strategies held December 1-3, 1987. The session was sponsored jointly by the United Auto Workers —Community Action Program (UAW-CAP) and the Michigan Democratic Party. A handbook on politi-

---

1-5.4 Leave of Absence for General or Special Election.—An employee on required leave of absence for a general or special election but not elected in that election shall return from leave of absence immediately after the official canvass of votes.

1-5.4a An employee on required leave elected in a general or special election shall leave state classified employment by resignation, retirement or appropriate separation immediately upon assumption of the office.

1-5.5 Political Party Activities.— An employee in the classified service may:

1-5.5a Become a member or an officer of a political party committee formed or permitted under the election laws of Michigan or of the United States.

1-5.5b Be a delegate to any convention held by a political party.

1-5.5c Engage in political activities on behalf of a candidate or issue in connection with a partisan or non-partisan election.

cal campaign techniques prepared by the National Democratic Committee was used as a training manual at the seminar. Although the Director of the Office of State Employer knew the three-day seminar was an event sponsored by the UAW-CAP, he did not know that it was a seminar that was patently political.

Approximately fifty-six employees who were members of UAW Local 6000 attended the seminar. Seventeen invoked the union officer leave provision of their collective bargaining agreement, one used the Administrative Leave Bank 1 provision of that agreement, and one attended without utilizing any union leave arrangement.[2] The re-

_____

[2] Pertinent provisions of the Local 6000 collective bargaining agreement with the state are:

ARTICLE 7
UNION BUSINESS AND ACTIVITIES

Section A. Time Off for Union Business.

1. To the extent that attendance for Union business does not substantially interfere with the Employer's operation, properly designated Union Representatives . . . shall be allowed time off without pay for authorized union business. Employees who have been granted leave without pay shall not earn annual, sick, or length of service credits during the time spent in authorized Union activities. Such lost time shall not be detrimental in any way to the employee's record. . . .

\*   \*   \*

3. The employee may utilize any accumulated time (compensatory or annual) in lieu of taking such time off without pay. When the employee elects to utilize annual leave credits, the Union may "buy back" such credits up to a limit of one hundred twenty (120) hours except as may be agreed [on] a case by case basis, subject to the following regulations. . . .

\*   \*   \*

Section C. Time Off Without Loss of Pay During Working Hours.

Employees shall be allowed time off without loss of pay during working hours to attend Grievance Hearings, Labor-Management Meetings, and Committee Meetings. . . .

Section D. Administrative Leave Banks.

Subject to the operational needs of the Employer, employees covered by this Agreement and designated in accordance with the provisions below shall be permitted time off without loss of

pay during scheduled working hours to attend authorized Union functions, subject to the following conditions:

1. An Administrative Leave Bank is established based on 300 hours of Administrative Leave for each 1,000 employees in the Human Services and Administrative Support Units combined. . . .

* * *

Such Administrative Leave shall not be treated as hours worked for the purposes of computing daily or biweekly overtime premium.

It is agreed that the Administrative Leave Bank provided herein replaces the Administrative Leave Bank granted in the Civil Service Commission Employee Relations Policy.

* * *

No deduction shall be made, nor shall any employee be entitled to be released on such Administrative Leave, without prior written authorization from the President of Local 6000 or his/her designee.

2. An Administrative Leave Bank shall be established based on seven (7) hours of Administrative Leave for every ten (10) employees in these Bargaining Units at the end of the first pay period in January of each calendar year. The Employer agrees to furnish the Union with the names of employees in these Units. . . .

The Union shall designate to the Employer in writing the names of its officers or other elected or appointed officials entitled to utilize such administrative bank. The Union may designate up to nine (9) representatives who shall be the only ones permitted to use such bank. . . .

* * *

Such representatives are to be considered as employees of the Union during the periods of absence covered by Administrative Leave, from the bank. Should an Administrative Board or court rule otherwise, the Union shall indemnify and hold the Employer harmless from any Workers['] Compensation claims by the employee arising during or as a result of the employee's absence covered by Administrative Leave from the bank.

For purpose of seniority accrual, time spent by such employees shall be considered as time worked unless prohibited by applicable legislation. The Union shall reimburse the Employer for the Employer's share of all applicable insurance premiums during the periods of absence covered by Administrative Leave from the bank.

### ARTICLE 16
#### LEAVES OF ABSENCE

This article makes unpaid leave of absence available to employees for purposes of secondary education related to employment; military service; medical treatment; maternity and paternity leave, and for service with the union as an officer or

maining thirty-seven were union members who used the administrative leave buyback program, which was not negotiated as part of a collective bargaining agreement but gained recognition over a period of time.[3]

On August 19, 1988, plaintiffs filed a verified complaint challenging the validity of the modified rule. The individual plaintiffs are employed by the State of Michigan in the classified civil service. Plaintiff La Clair is Vice President of the American Federation of State, County and Municipal Employees (AFSCME), Local 576. Plaintiff Hajduk-Emmons is a member of Local 6000, AFL-CIO (UAW). The remaining plaintiffs are all labor organizations that are collective bargaining agents for different groups of state employees in the classified civil service. Each qualifies as an "Employee Orga-

---

as a staff representative. Only with respect to union leave is an employee allowed to accumulate seniority throughout the period of absence.

\* \* \*

ARTICLE 18

UNION REPRESENTATION

Section D. Union Leaves

If any Union Representative(s) is expected to spend more than 25% (520) hours of the contract work year . . . in representation activities he/she may be so designated and identified by the Union. They shall be relieved of all work duties during the course of such leave; and the Union shall reimburse the State for the gross total cost of such employee(s) wages, and the Employer's share of premiums for all insurance programs. . . .

The employee's status for pay, benefits, insurance, retirement and other benefits shall be identical to administrative leave.

. . .

[3] Under the noncontractual administrative leave buyback arrangement between the state and Local 6000, the salaries of the thirty-seven members were reimbursed by the union. No reimbursement was received for fringe benefits, which include, but are not limited to, retirement, medical, life insurance, and so forth. Fringe benefits for a "full package" averages 35.1% of the gross salary for a state classified employee. The employees never left payroll status, and continued to accrue seniority credit. No leave time was deducted from the employee's annual leave balance.

nization" under CSR 6-2.1(11), having as its purpose "to deal with the employer concerning grievances and terms and conditions of employment." Each has an agreement with the state incorporating leave provisions similar to those in the Local 6000 contract. The plaintiff unions claim that they collectively represent approximately 41,700 classified employees, totaling approximately sixty-seven percent of all employees in the classified civil service.

Plaintiffs claim that defendants, by adopting the modification of CSR 1.5-7, exceeded their authority to restrict political activities under the Michigan Constitution and under § 4 of 1976 PA 169, the Political Activities of Public Employees Act, MCL 15.404; MSA 4.1702(4), which provides in part:

> The activities permitted by sections 2 and 3 [MCL 15.402, 15.403; MSA 4.1702(4), 4.1702(3)] shall not be actively engaged in by a public employee during those hours when that person is being compensated for the performance of that person's duties as a public employee.

The complaint contains three counts: count I asserts violations of plaintiffs' constitutional rights to free speech and association, Const 1963, art 1, § 5; count II asserts violation of 1976 PA 169, MCL 15.401 *et seq.*; MSA 4.1702(1) *et seq.*, in that the commission exceeded its authority to regulate the political activities of state classified employees under Const 1963, art 11, § 5; and count III asserts violations of constitutional guarantees of equal protection and due process, Const 1963, art 1, §§ 2 and 17. Plaintiffs requested a declaratory judgment invalidating CSR 1-5.7 and injunctive relief enjoining defendants from promulgating and enforcing the modified rule.

On August 25, 1988, the commission suspended enforcement of the new language adopted in the modification of CSR 1-5.7 pending a ruling by the court. Plaintiffs claim that before the adoption of the amendment, no classified employees were disciplined for engaging in political activity while on negotiated leave. However, the record does not indicate whether the commission had ever been confronted with a situation where the unions had utilized administrative leave time for political activities. The parties agree that no union employee has been disciplined or penalized in any way for attending the December 1988 training session, nor has the modified rule been enforced against any employee.

On September 16, 1988, the circuit court entered a preliminary injunction enjoining defendants from enforcement of CSR 1-5.7, as modified. Subsequently, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(1),(5), and (8). Plaintiffs filed a cross-motion for summary disposition pursuant to MCR 2.116(C)(10).

Following a hearing on the motions for summary disposition and for permanent injunctive relief, the circuit court found that all plaintiffs had standing and that they were entitled to relief under count II. The court, however, declined to rule on the constitutional issues.

On October 28, 1988, the circuit court entered an order that granted plaintiffs' motion for summary disposition, declared modified CSR 1-5.7 invalid, and permanently enjoined its enforcement. The trial court also denied defendants' request for relief. On appeal, defendants raise only two issues: (1) whether the plaintiffs lack standing because of their failure to allege facts that give rise to an actual controversy for the court to decide and (2) whether the Civil Service Commission exceeded its

constitutional authority or violated § 4 of 1976 PA 169 by adopting CSR 1-5.7, as modified.[4]

I

Defendants first contend that the plaintiffs lack standing to seek declaratory judgment because they have failed to plead facts or offer proofs that any named plaintiff was the subject of any enforcement action, or that any plaintiff intends to engage in activity that would fall within the purview of newly adopted CSR 1-5.7, as modified. Therefore, defendants claim that there is no justiciable controversy as required by MCR 2.605(A)(1).[5]

Although the plaintiffs and the defendants have argued federal rulings in support of their respective positions, we need not rely on federal law to resolve standing issues in our courts, particularly when the complaint specifically addresses violations of the Michigan Constitution and a state statute. *House Speaker v State Administrative Bd,* 190 Mich App 260; 475 NW2d 440 (1991); *Killeen v Wayne Co Road Comm,* 137 Mich App 178; 357 NW2d 851 (1984).

Under Michigan law, standing is required to insure that only those who have a substantial interest in a dispute will be allowed to come into court to complain. *Saginaw Library Bd v 70th Dist Judges,* 118 Mich App 379; 325 NW2d 777 (1982); *St John's-St Luke Evangelical Church v Nat'l Bank of Detroit,* 92 Mich App 1; 283 NW2d 852

---

[4] Defendants' motion for summary disposition was also based on MCR 2.116(C)(1), lack of jurisdiction over the person or property. That issue has not been raised on appeal and therefore is waived. *Goolsby v Detroit,* 419 Mich 651, 655, n 1; 358 NW2d 856 (1984).

[5] MCR 2.605(A)(1) provides:

In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

(1979). The standing doctrine recognizes that litigation should be conducted only by a party having "an interest that will assure sincere and vigorous advocacy." *Michigan License Beverage Ass'n v Behnan Hall, Inc,* 82 Mich App 319, 324; 266 NW2d 808 (1978). A litigant attempting to enforce or vindicate a right extended by statute must also show that he will be detrimentally affected in a manner different than the citizenry at large. *Muskegon Building & Construction Trades v Muskegon Area Intermediate School Dist,* 130 Mich App 420, 423; 343 NW2d 579 (1983).

The existence of an "actual controversy" is a condition precedent to invocation of declaratory relief. In general, an actual controversy exists where a declaratory judgment or decree is necessary to guide a plaintiff's future conduct in order to preserve his legal rights. This requirement of actual controversy prevents a court from deciding hypothetical issues. However, a court is not precluded from reaching issues before actual injuries or losses have occurred. Also, before affirmative declaratory relief can be granted, it is essential that a plaintiff, at a minimum, pleads facts entitling him to the judgment he seeks and proves each fact alleged, i.e., a plaintiff must allege and prove an actual justiciable controversy. Therefore, what is essential is that plaintiffs plead and prove facts that indicate an adverse interest necessitating the sharpening of the issues raised. *Shavers v Attorney General,* 402 Mich 554, 588-589; 267 NW2d 72 (1978), cert den sub nom *Allstate Ins Co v Kelly,* 442 US 934 (1979); *Crawford Co v Secretary of State,* 160 Mich App 88, 91; 408 NW2d 112 (1987); *Detroit Coalition for Human Rights v Dep't of Social Services,* 431 Mich 172, 191; 428 NW2d 335 (1988).

The threshold question, then, is whether the

individual plaintiffs and the labor unions have an interest in the outcome of this litigation sufficient to invoke the controversy-resolving powers of the judiciary.

The record shows that CSR 1-5.7 was modified in response to the December 1988 training session, and it will be enforced if this case is resolved in favor of defendants. The individual plaintiffs have asserted that enforcement will prohibit any political activity by them while on leave to engage in union-sponsored activities that have been arranged by the unions with the consent and cooperation of the employer. The plaintiff unions claim that they, as the sponsoring agencies, have a direct institutional interest in the outcome of this litigation that is separate and distinguishable from the interest of the classified employees.

If the trial court had merely addressed defendants' motion for summary disposition under MCR 2.116(C)(8), failure to state a cause of action, we would agree that the plaintiffs failed to state a justiciable controversy because they did not allege any immediate or imminent harm from the adoption of CSR 1-5.7, as modified. However, the trial court also was requested to consider plaintiffs' motion for summary disposition under MCR 2.116(C)(10).

A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, and other documentary evidence available to it and grant summary disposition if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A party opposing a motion brought under C(10) may not rest upon the mere allegations or denials in his pleadings, but must by affidavit, deposition, admission, or other documentary evidence set forth specific facts showing that

there is a genuine issue for trial. MCR 2.116(G)(4). *Panich v Iron Wood Products Corp*, 179 Mich App 136, 139; 445 NW2d 795 (1989). Where the opposing party fails to come forward with evidence beyond the allegations or denials in the pleadings to establish the existence of a material factual dispute, the motion is properly granted. *Morganroth v Whitall*, 161 Mich App 785, 788; 411 NW2d 859 (1987); MCR 2.116(G)(4).

Several affidavits were submitted to the court in support of the motions setting forth the facts described above. None of the material facts were disputed. Any defect in plaintiffs' pleadings because of a failure to allege imminent threat of harm could have been corrected by an amendment to the pleadings to correspond to the facts as stated in the supporting affidavits. MCR 2.116(I)(5). Because such relief would have been freely given, we will not now remand for amendment when the trial court's ruling effectively recognized that the plaintiffs' claims showed adverse interests in light of the threatened enforcement of CSR 1-5.7, as modified, and presented sharpened issues requiring judicial resolution to guide the future conduct of the parties. We believe that the trial court properly found that the plaintiffs had standing to seek a declaratory judgment, because a justiciable controversy existed involving all the plaintiffs, whether individuals or unions.[6]

II

Defendants' second contention is that the trial

---

[6] We also note that our Supreme Court, in *Council No 11, AFSCME v Civil Service Comm*, 408 Mich 385; 292 NW2d 442 (1980), afforded relief to the individual and union plaintiffs in a similar challenge to Rule 7 of the Civil Service Commission Rules, although the unions' standing was never challenged. Robert G. Cusack, an individual plaintiff, was discharged for violating the rule.

judge erred in declaring CSR 1-5.7 invalid on the ground that it violates 1976 PA 169. We agree.

This Court's review of declaratory relief is de novo on the record. *Menken v 31st Dist Court,* 179 Mich App 379, 380; 445 NW2d 527 (1989).

As noted above, § 4 of 1976 PA 169 prohibits a public employee from actively engaging in the political activity permitted in §§ 2 and 3 of 1976 PA 169 "during those hours when that person is being compensated for the performance of that person's duties as a public employee." Section 3 relates to employees of a political subdivision of the state and is not relevant here. Section 2 allows a classified employee in the state civil service to (a) become a member of a political party committee, (b) be a delegate to a political convention, (c) become a candidate for a local office without obtaining a leave of absence (if the person becomes a candidate for state office, the person must take a leave of absence without pay), and (d) "engage in other political activities on behalf of a candidate or issue in connection with partisan or nonpartisan elections." MCL 15.402; MSA 4.1702(2).

Our Supreme Court in *Council No 11, AFSCME v Civil Service Comm,* 408 Mich 385; 292 NW2d 442 (1980), unanimously rejected the commission's claim that it enjoyed exclusive jurisdiction to "legislate" on the subject of political activity by classified state employees. The Court held that 1976 PA 169 was controlling and, to the extent that the broad provisions of CSR 7 purported to regulate the off-duty political activity of state classified civil service employees, CSR 7 was invalid.[7]

---

[7] Rule 7 of the Michigan Civil Service Commission stated in pertinent part:

    7.1 Prohibited Activities—No employee in the state civil service shall engage in any political activity while on duty, nor shall he be or become: An officer in a political party or

Following the ruling in *Council No 11,* CSR 7 was replaced by CSR 1-5.1 through 1-5.5, which generally incorporated the language of § 2 of 1976 PA 169. However, the language of CSR 1-5.7, prohibiting political activities while a classified employee is on "actual duty" substantially differed from the language of § 4 of 1976 PA 169. The narrower issue presented here is whether CSR 1-5.7, as modified, violates § 4 of 1976 PA 169.

Plaintiffs contend that the commission's rule-making authority is confined to regulating political activity of classified personnel while they are on the job, and only to the extent that such activity relates to job performance.

> We intend, rather, to be understood as emphasizing that the commission's "sphere of authority" delimits its rule-making power and confines its jurisdiction over the political activity of classified personnel to on-the-job behavior related to job performance. [*Council No 11, supra* at 408.]

Plaintiffs argue that this restriction precludes regulation of political activity while classified employees are on union leave and are not actually performing their assigned tasks at their respective job

organization; a member of any political party committee formed or authorized under the general election laws of the state; a delegate to any state, district or county convention held by any political party in this state; a member of any national political party committee; a delegate from this state to any national political party convention.

\* \* \*

7.3 Candidates for Public Office—No employees in the state civil service shall become a candidate for nomination to any partisan elective office without first obtaining a leave of absence. The leave of absence shall remain in force and effect until the candidacy becomes official by the filing of petitions or by the action of a caucus or a convention, or by a filing fee. When a state civil service employee becomes an official candidate for elective office set forth as above, he shall at once resign from his civil service position.

sites. We disagree. When the above-quoted passage is read in context, we conclude that the Court in *Council No 11* intended "on-the-job behavior related to job performance" to include activities by classified employees during the hours they were engaged to work for the state and for which they were being compensated. The Court stated:

> We do not question the commission's authority to regulate employment-related activity involving internal matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance, including the power to prohibit activity during working hours which is found to interfere with satisfactory job performance. [*Council No 11, supra* at 406.]

Classified employees who are being paid for their time should not be permitted to engage in political activities simply because they leave their assigned job site to attend to matters that, although not specifically related to their assigned task, tend to enhance their overall job performance and therefore inure to the parties' mutual benefit. Such a prohibition should apply whether the classified employee is leaving his workplace to go to a restroom, to attend a grievance hearing, or to attend a union function when released by the employer pursuant to an agreement with the union. The prohibition against political activity is permitted if three conditions are met: (1) the classified employee receives some form of compensation for the time spent on leave, (2) the employee would be performing duties at the usual job site if the employee were not on leave, and (3) the employee is permitted to leave for a specific purpose approved by the employer.

Our review of the various leaves allowed under the agreement with Local 6000, n 2, *supra,* and the

administrative leave buyback arrangement, n 3, *supra,* convinces us that each of the leave arrangements under consideration here were adopted because the union and state agreed to them. Under the agreements, release of employees for participation in union activities during working hours is part of the employees' "duties" for which the employees are compensated. The fact that the compensation for some leave arrangements is in the form of fringe benefits only, and does not include salary, is of no consequence.

The term "on-the-job," as used in *Council No 11* was not adopted in Rule 1-5.7. Instead, the commission has used the term "actual duty." "Actual duty" is defined in CSR 1-5.7, as modified, to include the employees' scheduled work hours and overtime, as well as any time spent by employees on union activities while released from their workplace during scheduled work hours. Specifically excepted from the definition of "actual duty" are those leave arrangements that do not involve (a) compensation in some form, (b) release from the workplace during scheduled work hours, or (c) release from the workplace for a specific approved purpose. The exceptions are annual leave, unpaid leave, lost time and leave granted to the employee to become a full-time employee of an employee organization. The three conditions stated above having been met, the prohibition against political activity while an employee is on "actual duty" is proper under 1976 PA 169.

We further note that if an employee invoked the annual leave buyback provision under art 7, § A(3), n 2, *supra,* the union reimbursed the state for the salary paid, (but not the cost of fringe benefits) and the employee's annual leave time was reinstated. The time spent on union activity would then be considered "actual duty" because it was compen-

sated time taken from the workplace during regularly scheduled work hours for a specific, approved purpose.

Similarly, when an employee utilized the administrative leave buyback program, the state was reimbursed for the employee's salary, but not for the fringe benefits, n 3, *supra.* Again, the employee utilized time for union activities during regularly scheduled work hours that otherwise would have been spent performing assigned work.

Accordingly, we are convinced that the adoption of CSR 1-5.7, as modified, was within the commission's authority and that the rule does not conflict with §§ 2 and 4 of 1976 PA 169. The trial judge's rulings declaring CSR 1-5.7, as modified, invalid and granting an injunction against its enforcement are reversed.

III

Because the trial court did not rule on the constitutional issues raised in counts I and III, we decline to address those issues. Our review is limited to issues actually decided by the trial court. *Hunters Pointe Partners Ltd Partnership v United States Fidelity & Guaranty Co,* 177 Mich App 745, 750; 442 NW2d 778 (1989). Accordingly, we remand to the trial court for further proceedings during which a determination shall be made on the remaining issues.

Reversed and remanded. We do not retain jurisdiction.