208 Mich. App. 479 (1995)
528 N.W.2d 811
MICHIGAN STATE AFL-CIO
v.
CIVIL SERVICE COMMISSION
Docket No. 149885.
Michigan Court of Appeals.
Submitted May 17, 1994, at Detroit.
Decided February 6, 1995, at 9:05 A.M.
Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C. (by Theodore Sachs and Andrew Nickelhoff), for the plaintiffs.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and Deborah Ann Devine, Assistant Attorney General, for the defendants.
Amicus Curiae:
Mark Brewer (Paul Denenfeld, of Counsel), for the ACLU Fund of Michigan.
*482 Before: MICHAEL J. KELLY, P.J., and CORRIGAN and C.D. CORWIN,[*] JJ.

AFTER REMAND
CORRIGAN, J.
This is the second appeal challenging the validity of Civil Service Rule (CSR) 1-5.7, modified effective July 14, 1988, restricting the use of union leave programs for partisan political activity. This Court, in the original appeal, AFL-CIO v Michigan Civil Service Comm, 191 Mich App 535; 478 NW2d 722 (1991) (hereinafter AFL-CIO I), ruled that the modification of the rule was within the Civil Service Commission's authority and did not conflict with § 4 of the political activities of public employees act, 1976 PA 169, § 4, MCL 15.404; MSA 4.1702(4). This Court reversed the circuit court's holding, dissolved the injunction against enforcement of CSR 1-5.7, and remanded for a determination of the remaining constitutional issues in counts I and III of plaintiffs' August 1988 complaint.
Plaintiffs appeal as of right the order on remand granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and 2.116(C)(10) (no genuine issue of material fact). We affirm the circuit court's determination that CSR 1-5.7, as modified, does not violate classified public employees' rights of free expression and association under the Michigan Constitution's Declaration of Rights, Const 1963, art 1, §§ 3[1] and 5,[2] nor is the rule unconstitutionally *483 vague or overbroad, nor does it violate classified employees' rights to equal protection and due process, Const 1963, art 1, §§ 2[3] and 17.[4]
I. UNDERLYING FACTS
The pertinent facts and procedural history are fully set forth in AFL-CIO I. We emphasize AFL-CIO I's summary of the relevant texts and the factual predicate that spawned the modification of the rule:
Before July 14, 1988, CSR 1-5.7, relating to political activities, provided:
"1-5.7 Prohibited During Work Hours. Activities permitted under sections 1-5.1 and 1-5.5 shall not be engaged in by a classified employee during the hours the employee is on actual duty."
Effective July 14, 1988, the rule was amended by adding the following language:
"Actual duty includes the employee's scheduled work hours and overtime. Off duty includes all time outside scheduled work hours and overtime, annual leave, unpaid leave of absence, lost time and leave granted to the employee to become a full time employee of an employee organization holding exclusive representation rights, pursuant to an approved collective bargaining agreement. For purposes of this rule, employees released from their regular state workplace for union activities, *484 union business or any other employee organization purpose under any leave arrangement, including `annual leave buyback' provisions, shall be considered to be on actual duty, released by the employer to take part in union activities deemed to be in the best interests of the state and not including partisan political activity."
The modification was apparently adopted in response to a training seminar on election campaign strategies held December 1-3, 1987. The session was sponsored jointly by the United Auto Workers-Community Action Program (UAW-CAP) and the Michigan Democratic Party. A handbook on political campaign techniques prepared by the National Democratic Committee was used as a training manual at the seminar. Although the Director of the Office of State Employer knew the three-day seminar was an event sponsored by the UAW-CAP, he did not know that it was a seminar that was patently political.
Approximately fifty-six employees who were members of the UAW Local 6000 attended the seminar. Seventeen invoked the union officer leave provision of their collective bargaining agreement, one used the Administrative Leave Bank 1 provision of the agreement, and one attended without utilizing any union leave arrangement. The remaining thirty-seven were union members who used the administrative leave buyback program, which was not negotiated as part of a collective bargaining agreement but gained recognition over a period of time. [AFL-CIO I, supra at 537-541.]
II. LAW OF THE CASE
Because this Court already has decided controlling questions that affect this appeal, we apply the doctrine of law of the case. Under that doctrine, an appellate court's decision concerning a particular issue binds courts of equal or subordinate jurisdiction during subsequent proceedings in the *485 same case. A legal question may not be decided differently where the facts remain materially the same. Bruce Twp v Gout (After Remand), 207 Mich App 554; 526 NW2d 40 (1994); People v Peters (After Remand), 205 Mich App 312, 316; 517 NW2d 773 (1994); Bennett v Bennett, 197 Mich App 497, 499; 496 NW2d 353 (1992). The doctrine applies only to those questions specifically determined in the prior decision and to questions necessarily determined in arriving at that decision. Peters, supra. The basic purpose of the doctrine is to maintain consistency and to avoid reconsideration of matters previously decided during a single continuing lawsuit. Locricchio v Evening News Ass'n, 438 Mich 84, 109; 476 NW2d 112 (1991); Bennett, supra.
In AFL-CIO I, this Court held that the Civil Service Commission did not exceed its constitutional authority or violate the provisions of 1976 PA 169, MCL 15.401 et seq.; MSA 4.1702(1) et seq., by adopting CSR 1-5.7 as modified. Section 4 of 1976 PA 169, MCL 15.404; MSA 4.1702(4), prohibits a public employee from engaging in otherwise-protected political activities[5] "during those hours *486 when that person is being compensated for the performance of that person's duties as a public employee." AFL-CIO I, supra at 548.
Plaintiffs have not contested the validity of CSR 1-5.1 through CSR 1-5.5 or 1976 PA 169. Rather, they have argued that "union leave" is off-duty time beyond the reach of Civil Service Commission regulation. This Court has already rejected plaintiffs' characterization of union leave as off-duty time, AFL-CIO I, supra at 550-551. CSR 1-5.7 defines union-leave time as "actual duty." AFL-CIO I held that actual duty means "on-the-job behavior related to job performance" for purposes of § 4 of 1976 PA 169 and CSR 1-5.7, including activities of classified employees during working hours for which they were being compensated. AFL-CIO I, supra at 550. The Court relied on *487 Council No 11, AFSCME v Civil Service Comm, 408 Mich 385, 408; 292 NW2d 442 (1980), in which our Supreme Court stated that "the commission's `sphere of authority' delimits its rule-making power and confines its jurisdiction over the political activity of classified personnel to on-the-job behavior related to job performance." AFL-CIO I held that a prohibition against political activity by classified employees is permissible if three conditions are satisfied:
(1) the classified employee receives some form of compensation for the time spent on leave, (2) the employee would be performing duties at the usual job site if the employee were not on leave, and (3) the employee is permitted to leave for a specific purpose approved by the employer. [AFL-CIO I, supra at 550].
This Court concluded that the release of employees under various union-leave arrangements was part of the employees' duties for which they were being compensated. The law of this case establishes that a civil servant's release to participate in union activities under various union-leave arrangements is on-the-job behavior related to job performance; the union-leave programs at issue do not implicate classified employees' off-duty activities. Plaintiffs may not relitigate this issue on appeal.
III. FREE SPEECH AND ASSOCIATION
Plaintiffs first contend that CSR 1-5.7, as modified, abridges classified employees' rights to free speech and association, contrary to Const 1963, art 1, §§ 3 and 5. Plaintiffs do not contest the commission's authority to regulate classified employees' political activities on the job or the constitutionality *488 of 1976 PA 169, which prohibits a public employee from engaging in political activity while on duty, MCL 15.404; MSA 4.1702(4). See n 5, supra. They again contend that CSR 1-5.7 creates a blanket prohibition of partisan political activity during off-hours and off-premises union activities. As noted, it is the law of this case that union leave constitutes actual-duty time. Thus, we reject plaintiffs' attempt to recast union leave as off-duty time in contravention of AFL-CIO I.
The circuit court concluded that CSR 1-5.7 satisfied a strict scrutiny standard. Although we do not reject the circuit court's holding, we conclude that CSR 1-5.7, as modified, need not be evaluated under the strict scrutiny standard reserved for governmental attempts to restrict the speech of private citizens. The Civil Service Commission was not obliged to demonstrate that CSR 1-5.7 furthers a compelling state interest. The state must demonstrate a compelling state interest where it seeks to restrict the speech of the citizenry at large on the basis of the content of the speech.[6]R A V v St Paul, Minnesota, 505 US ___; 112 S Ct 2538; 120 L Ed 2d 305 (1992); Kropf v Sterling Heights, 391 Mich 139; 215 NW2d 179 (1974); Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 210), 396 Mich 465, 481; 242 NW2d 3 (1976). However, CSR 1-5.7 does not regulate the speech and association of state classified employees while they are off duty. On the contrary, CSR 1-5.7, as modified, prohibits classified public employees released for union activities while being compensated by *489 the state from engaging in partisan political activity during working hours. AFL-CIO I, supra at 551-552; Council No 11, supra.
Plaintiffs' complaint alleges violations of the Michigan Constitution, but their argument ostensibly rests in part on First Amendment authority, U S Const, Am I.[7] We reject the notion that government employees have a right grounded in the First Amendment to active participation in partisan politics, whether they are on or off the job. The United States Supreme Court long has recognized Congress' power to restrict the partisan political conduct of federal employees, both on and off duty. Ex Parte Curtis, 106 US 371; 1 S Ct 381; 27 L Ed 232 (1882). In a plurality opinion, the United States Supreme Court recently reaffirmed the government's valid and important interest in regulating partisan political conduct of its employees, both on and off duty. "To begin with, even many of the most fundamental maxims of our First Amendment jurisprudence cannot reasonably be applied to speech by government employees.... Even something as close to the core of the First Amendment as participation in political campaigns may be prohibited to government employees." Waters v Churchill, 511 US ___, ___; 114 S Ct 1878; 128 L Ed 2d 686, 697-698 (1994), citing Broadrick v Oklahoma, 413 US 601; 93 S Ct 2908; 37 L Ed 2d 830 (1973); United States Civil Service Comm v Nat'l Ass'n of Letter Carriers, 413 US 548; 93 S Ct 2880; 37 L Ed 2d 796 (1973); see also Brown v Glines, 444 US 348; 100 S Ct 594; 62 L Ed 2d 540, 549, n 13 (1979); Council No 11, supra at 406-409.
*490 Restricting partisan political activity of those in government service ensures that employment decisions occur on the basis of meritorious performance, and not on the basis of political affiliations. Letter Carriers, supra at 555, citing United Public Workers v Mitchell, 330 US 75, 98; 67 S Ct 556; 91 L Ed 754 (1947); Council No 11, supra at 397-398. Federal employees are barred from participation in various partisan political activities, both on and off duty, pursuant to the Hatch Act, 5 USC 7324(a) (2). The Supreme Court has upheld the validity of the Hatch Act's restrictions on partisan political activity.[8]Letter Carriers, supra at 554-557, citing Mitchell, supra. Indeed, an early executive directive under Thomas Jefferson sought to restrict electioneering in the Executive Branch:
Early in our history, Thomas Jefferson was disturbed by the political activity of some of those in the Executive Branch of the Government. See 10 J. Richardson, Messages and Papers of the Presidents 98 (1899). The heads of the executive departments, in response to his directive, issued an order stating in part that "[t]he right of any officer to give his vote at elections as a qualified citizen is not meant to be restrained, nor, however given, shall it have any effect to his prejudice; but it is expected that he will not attempt to influence the votes of others nor take any part in the business of electioneering, that being deemed inconsistent with the spirit of the Constitution and his duties to it." Id. at 98-99. [Letter Carriers, supra at 557. Emphasis added.]
Such restrictions serve "valid and important state interests, particularly with respect to attracting greater numbers of qualified people by insuring their job security, free from the vicissitudes of the *491 elective process, and by protecting them from `political extortion.'" Broadrick, supra at 606.
Plaintiffs also contend that CSR 1-5.7 regulates speech on the basis of content, in violation of the First Amendment. In Letter Carriers, supra at 556, the Supreme Court concluded that "neither the First Amendment nor any other provision of the Constitution invalidates a law barring this kind of partisan political conduct by [government] employees." The First Amendment does not invalidate the bar against partisan political activities in CSR 1-5.7.
Nonetheless, we recognize that Michigan has chosen to accord its classified civil service employees a broader degree of political freedom than that enjoyed by federal employees. The adoption of the civil service system,[9] as amended in 1940 and by the 1963 Constitution, limits the prohibition on employees' political activities to on-duty hours. Council No 11, supra at 406-407, recognized the commission's authority to regulate
employment-related activity involving matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance, including the power to prohibit activity during working hours which is found to interfere with satisfactory job performance.
CSR 1-5.7 properly effects the Civil Service Commission's legitimate ban on partisan political activity during actual-duty hours. Nothing in this rule offends a recognized Michigan or federal constitutional right to free speech or assembly. The state government, as an employer, most assuredly may restrict the partisan political activity of its employees while they are on duty.
*492 IV. VAGUENESS AND OVERBREADTH
Plaintiffs next contend that CSR 1-5.7 as modified is unconstitutionally vague and overbroad. We disagree. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v Rockford, 408 US 104, 108; 92 S Ct 2294; 33 L Ed 2d 222 (1972). In Woll v Attorney General, 409 Mich 500, 533; 297 NW2d 578 (1980), citing Grayned, supra at 108-109, our Supreme Court enunciated the standards for evaluating vagueness:
A statute may be challenged for vagueness on the grounds that it
 is overbroad, impinging on First Amendment freedoms, or
 does not provide fair notice of the conduct proscribed, or
 is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed.
See also Kotmar, Ltd v Liquor Control Comm, 207 Mich App 687, 696; 525 NW2d 921 (1994). Applying these standards, plaintiffs' arguments fail. CSR 1-5.7 provides fair notice of prohibited conduct. The meaning of the words can be ascertained by reference to judicial determinations, to the common law, to dictionaries, and to the words themselves. Id.
Plaintiffs specifically argue that CSR 1-5.7 is vague and overbroad because it does not explicitly distinguish "partisan" from "nonpartisan" political activity. We disagree. In Broadrick, supra, the United States Supreme Court considered language in an Oklahoma statute that, among other things, prohibited classified employees from becoming officers *493 or members of a partisan political club.[10] The Court in Broadrick, supra at 608, quoting Letter Carriers, supra at 578-579, in which the Court had held that the civil service regulations accompanying the Hatch Act[11] prohibiting federal employees from partisan political activity are neither unconstitutionally vague nor overbroad, acknowledged that words such as "partisan" inevitably contain germs of uncertainty, but concluded that
"there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest."
Just as in Broadrick and Letter Carriers, the term "partisan political activity" is not so ambiguous that a classified employee of ordinary intelligence must necessarily guess at its meaning. Broadrick, supra at 607; Letter Carriers, supra at 579-580. We find no error warranting reversal.
Plaintiffs complain that CSR 1-5.7 is vague and overbroad because it does not differentiate partisan from nonpartisan political activity. Although helpful, such differentiation is not required. Plaintiffs are mistaken in hypothesizing that union-leave programs can be used for nonpartisan political activity. CSR 1-5.7 specifically refers back to CSR 1-5.1 and 1-5.5. CSR 1-5.5c permits an employee to engage in both partisan and nonpartisan political activity, but CSR 1-5.7 bars all political activity while an employee is on actual duty. Moreover, all political activity is a prohibited subject *494 of collective bargaining. CSR 6-2.1(19). Union leave is designed for union activity, not for political activities. Plaintiffs' attack on CSR 1-5.7 as vague and overbroad is without merit.
V. EQUAL PROTECTION AND DUE PROCESS
Finally, we reject plaintiffs' contention that CSR 1-5.7 violates equal protection and due process, Const 1963, art 1, §§ 2 and 17. CSR 1-5.7 bars union employees from partisan political activities while on union leave. Nonunion employees are not eligible for union leave. Union and nonunion members alike enjoy annual leave, sick leave, educational leave, and leave for jury duty. Moreover, both union and nonunion employees are prohibited from engaging in both partisan and nonpartisian political activities while on duty pursuant to the first sentence of CSR 1-5.7. Thus, the additional language of CSR 1-5.7 requiring classified employees to refrain from partisian activities while on union leave does not result in an advantage for nonunion employees, to whom union-leave time is not available. Indeed, the adoption of plaintiffs' views would lead to disparate treatment, because then only union employees could engage in partisan political activity while they are on duty. Accordingly, plaintiffs' equal protection and due process claims lack merit.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] Const 1963, art 1, § 3 provides:

The people have the right peacably to assemble, to consult for the common good, to instruct their representatives and to petition the government for the redress of grievances.
[2] Const 1963, art 1, § 5 provides:

Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press.
[3] Const 1963, art 1, § 2 provides in part:

No person shall be denied the equal protection of the laws.
[4] Const 1963, art 1, § 17 provides in part:

No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law.
[5] MCL 15.402, 15.403; MSA 4.1702(2), 4.1702(3) enumerate a classified employee's protected political activities, which the Civil Service Commission essentially adopted in Civil Service Rules 1-5.1 through 1-5.5 as follows:

1-5.1 Candidates for Public Office.  An employee in the classified service may become a candidate for nomination and election to any local elective office, partisan or non-partisan, without first obtaining a leave of absence.
1-5.1a An employee in the classified service may become a candidate for nomination and election to state office but shall request and shall receive a leave of absence without pay at the time of compliance with the candidacy filing requirements or sixty (60) days prior to the election in question, whichever date is closer to the election.
1-5.2 State Office Defined.  "State Office" in section 1-5.1a means full-time elective office in the Executive or Legislative Branch of State Government, Justice of the State Supreme Court, Judge of the Court of Appeals.
1-5.3 Leave of Absence for Primary Election.  An employee on required leave of absence for a primary election but not nominated in that election shall return from leave of absence immediately after the official canvass of votes.
1-5.3a An employee nominated in a primary election shall remain on leave of absence until the special or general election.
1-5.3b An employee nominated in a primary election who withdraws from the general or special election in accordance with applicable election law shall return from leave of absence immediately upon such withdrawal.
1-5.4. Leave of Absence for General or Special Election.  An employee on required leave of absence for a general or special election but not elected in that election shall return from leave of absence immediately after the official canvass of votes.
1-5.4a An employee on required leave elected in a general or special election shall leave state classified employment by resignation, retirement or appropriate separation immediately upon assumption of the office.
1-5.5 Political Party Activities.  An employee in the classified service may:
1-5.5a Become a member or an officer of a political party committee formed or permitted under the election laws of Michigan or of the United States.
1-5.5b Be a delegate to any convention held by a political party.
1-5.5c Engage in political activities on behalf of a candidate or issue in connection with a partisan or non-partisan election.
[6] However, states may restrict the speech of its citizenry with reasonable time, place, and manner restrictions that are content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication. Ward v Rock Against Racism, 491 US 781, 791; 109 S Ct 2746; 105 L Ed 2d 661 (1989); Perry Ed Ass'n v Perry Local Educators' Ass'n, 460 US 37; 103 S Ct 948; 74 L Ed 2d 794 (1983).
[7] Generally, the rights to free speech and association under the Michigan Constitution, Const 1963, art 1, §§ 3 and 5, are coterminous with those under the First Amendment. Woodland v Michigan Citizens Lobby, 423 Mich 188, 202; 378 NW2d 337 (1985).
[8] The Civil Service Regulations exempt nonpartisan political activity from the ambit of the Hatch Act, 5 CFR 733.122.
[9] See 1937 PA 346 and 1939 PA 245.
[10] Okla Stat Ann, Title 74, § 818.
[11] 5 USC 7324(a)(2) and accompanying regulations 5 CFR 733.122.