*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BETH BAUER,

Petitioner-Appellant,

v

SAGINAW COUNTY and SAGINAW COUNTY
PROSECUTOR,

Respondents-Appellees.

FOR PUBLICATION
April 16, 2020
9:10 a.m.

No. 344050
Saginaw Circuit Court
LC No. 17-032353-AA

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

JANSEN, J.

Petitioner, Beth Bauer, appeals by leave granted[1] the order of the Saginaw Circuit Court reversing the determination of the Administrative Law Judge (ALJ) for the Michigan Administrative Hearing System that the newly elected Saginaw County prosecutor discharged petitioner in violation of the Political Freedom Act, MCL 15.401 *et seq.*, and vacating the ALJ's decision awarding petitioner damages. We affirm.

## I. FACTUAL BACKGROUND

On April 12, 1989, Michael Thomas was appointed Saginaw County prosecutor. According to Thomas, he had the statutory right to appoint staff of his choosing, including the legal office manager, for the appropriated positions. Thomas chose petitioner, who had been his legal secretary in private practice, as his legal office manager for the prosecutor's office. At the time, the legal office manager position was not unionized and was an at-will position.

The prosecutorial staff subsequently unionized in 2004, with the legal office manager position represented by the UAW Local 455, Unit 48 Manager Union. The 2004 collective-bargaining agreement (CBA) provided that a non-probationary employee could be disciplined,

---

[1] *Bauer v County of Saginaw*, unpublished order of the Court of Appeals, entered December 14, 2018 (Docket No. 344050).

suspended, or discharged for just cause. The 2004 CBA specifically preserved certain rights of elected officials in appendix A to the CBA. Appendix A stated, in relevant part: "Saginaw County Elected Officials and Judges have the legal authority to appoint their deputy(ies) and other personnel in accordance with the laws, regulations and court rules of the State of Michigan." Additionally, "Elected Officials' Deputies, and others as provided by law, regulation, or court rule, serve at the sole and unabridged discretion of the Elected Official or Judge/Court to whom said employee is assigned. All of said positions shall be filled at the sole discretion of the Elected Official or Judge/Court for which said employee is to work." Appendix A also listed the "job positions" for elected officials and judges and "their corresponding employer and/or co-employer." Under appendix A, Saginaw County and Saginaw County Prosecuting Attorney were co-employers of "Chief Assistant Prosecutor, Assistant Prosecutor 4, and Legal Office Manager."

During the 2008 collective bargaining sessions, Saginaw County proposed to eliminate just-cause protection for the legal office manager position and replace it with an at-will employment standard. According to Thomas, he was considerably older than petitioner and was uncertain whether he would continue as prosecuting attorney during the next election year in 2012 and so he sought to find "a way to make sure that Miss Bauer's employment as [legal office manager] continued" and to "create job protection" for her so that she could retain her position as the legal office manager "whether I was there or not, whether I was dead or alive or whether or not I was the prosecutor."

Thomas directed the county's labor specialist, Andre Borrello, to draft a memorandum of understanding (MOU) as a contract addition to the CBA. The union and respondents entered into a MOU regarding the legal office manager position. The MOU stated, in relevant part:

WHEREAS, the Employer, Co-Employer and Union have agreed in principle that although Article 8 of the CBA provides a just cause standard for discipline, subject to law and Appendix A, the position of Legal Office Manager in the Prosecuting Attorney's Office shall be an at-will position, subject to the terms and conditions of this Memorandum of Understanding.

NOW THEREFORE it is agreed as follows:

1. Contingent on ratification of a new CBA, which shall designate in its Appendix that the position of Legal Office Manager in the Prosecuting Attorney's Office is an at-will position, the Employer, Co-Employer and Union agree that the incumbent in said position, Beth Bauer, is not an at-will employee, but rather an employee subject to discipline under a just cause standard.

2. Once the incumbent vacates the position, all subsequent employees holding the Legal Office Manager position in the Prosecuting Attorney's Office shall be at-will employees and not subject to discipline under a just cause standard, unless specifically negotiated in future CBA's.

3. This Memorandum of Understanding shall have no force or effect unless and until a new CBA is ratified, which designates in its Appendix that the

position of Legal Office Manager in the Prosecuting Attorney's Office is an at-will position.

4. This Memorandum of Understanding shall not affect any provision of the current or future CBA other than that which is specifically provided herein.

The MOU was signed by Thomas as co-employer and dated December 1, 2009. Thomas acknowledged that the MOU did not address the duration of petitioner's employment as the legal office manager, nor did it contain language limiting the authority of a successor prosecutor to appoint the legal office manager. Moreover, Thomas was told by the county's civil counsel and "prosecutors around the state" that this MOU did not prevent his successor from making a political appointment. The 2008 CBA was ratified and reflected the new at-will employment standard.

In 2012, Thomas faced a challenge in the primary election. Petitioner campaigned for Thomas and served actively on his campaign committee, as she had in prior elections. The challenger, John McColgan, Jr., won the primary election and went on to be elected as prosecuting attorney. On December 10, 2012, prosecutor-elect McColgan sent an e-mail to petitioner that stated, in relevant part, "As I am sure you are aware, I am planning on bringing in my own office manager, as I believe every prosecutor before me has done. It would be greatly appreciated if you could advise as to your future plans, thereby allowing the most efficient transition possible."

Petitioner and the union representatives subsequently met with prosecutor-elect McColgan with respect to the legal office manager position. McColgan stated that he was not bound by the MOU and that he was bringing in his own legal office manager. On McColgan's first official day as prosecutor—January 2, 2013—petitioner reported to the prosecutor's office to find the new legal office manager sitting at the legal office manager's desk. McColgan met with petitioner and offered her a job as a floater in the prosecutor's office, but petitioner did not find the offer plausible. Later the same day, petitioner was presented with a "notice of lay-off, discharge, demotion, discharge" signed by McColgan, which notified petitioner of both "discharge (permanent employee)" and "not reappointed per statute" effective January 16, 2013. The notice indicated that the general reason for discharge was "[s]ervices no longer needed. Are an at-will employee under state statute."

## II. PROCEDURAL HISTORY

Petitioner grieved her discharge, claiming that the notice of "discharge" and "not reappointed by statute" were "in direct conflict with" the 2008 CBA. While the grievance was pending, petitioner filed a wrongful discharge action in federal court against McColgan and Saginaw County. The federal complaint presented several counts, including violation of petitioner's First Amendment right to political affiliation under 42 USC 1983, breach of employment agreement, legitimate expectation of just-cause employment, tortious interference with business expectancy, age and race discrimination, and intentional infliction of emotional distress. See *Bauer v Saginaw Co*, 111 F Supp 3d 767 (ED Mich, 2015). The parties agreed to hold the grievance in abeyance pending completion of the federal action. *Bauer*, 111 F Supp 3d at 772.

While the federal action was ongoing, plaintiff filed the present administrative action in the Michigan Administrative Hearing System (MAHS).[2] Petitioner alleged in her complaint that she supported Thomas during the 2012 campaign and that she did not learn until January 2, 2013, that McColgan had removed her from her position as legal office manager. Petitioner asserted that she believed she was discharged in retaliation for her political support of Thomas in violation of MCL 15.403(1)(d) of the Political Freedom Act. Petitioner also asserted that she was a just-cause employee and that McColgan provided no substantive reason for her discharge.

In response to the complaint, respondents asserted that Saginaw County authorized and appropriated funds under MCL 49.31 and MCL 49.35 of the prosecutors' appointment/tenure statute, MCL 49.31 *et seq*., for the Saginaw County prosecutor to appoint a chief assistant prosecuting attorney, 23 assistant prosecuting attorneys, a legal office manager, and clerical staff. Respondents asserted that under MCL 49.35, each of these employees served "at the pleasure of the prosecuting attorney" and had no right to maintain the position after the conclusion of the prosecutor's term of office. They noted that petitioner testified in her deposition in underlying litigation that she was appointed to the position of legal office manager by Thomas.

Respondents argued that the Political Freedom Act had never been applied to prevent an elected public official from exercising his statutory rights to make a political, partisan appointment and that the Political Freedom Act did not foreclose an elected official's right to appoint. They noted that the federal district court had concluded, with respect to petitioner's First Amendment claim, that the job duties of the legal office manager were inherently "political" and "confidential" so that a "patronage appointment" was permitted. Additionally, respondents argued that the Political Freedom Act was otherwise inapplicable to petitioner's claim and that she had no cause of action under the Political Freedom Act because she did not allege that McColgan or the county maintained a policy or practice which prevented her from engaging in political activity on behalf of a candidate.

While the administrative action was pending, the federal district court granted summary judgment in favor of respondents. *Bauer,* 111 F Supp 3d 767. The Sixth Circuit Court of Appeals affirmed the district court's decision. *Bauer v Saginaw Co*, 641 Fed Appx 510 (CA 6, 2016). The Sixth Circuit resolved the civil rights, discrimination, and emotional distress claims, writing:

> [B]ecause political affiliation is an appropriate consideration for the Legal Office Manager position, the defendants did not violate Bauer's constitutional rights by terminating her. And because Bauer failed to exhaust a mandatory grievance procedure in her employment agreement, we do not reach the merits of her breach-of-contract claim. As Bauer has failed to show a dispute of fact in any of her

---

[2] An employee who believes his or her statutory rights under the Act were violated may file a complaint in the MAHS. See MCL 15.406(1). If a hearing officer determines that a violation occurred, the office may order job reinstatement, back pay, reinstatement of work-related benefits, and attorney fees. MCL 15.406(1)(a)-(d).

remaining claims, we affirm the district court's grant of summary judgment to the defendants. [*Bauer*, 641 Fed Appx at 512.]

On November 18, 2015, respondents moved to dismiss petitioner's Political Freedom Act claim in the administrative action on preclusion grounds. Respondents noted that the federal district court had concluded: (1) that the position of legal office manager is an appointee of the county prosecutor and that personal and political affiliation are appropriate requirements for the effective performance of the job; (2) that if petitioner was a clerical employee as she claimed, she would be subject to MCL 49.31; (3) that there was no merit or factual support for petitioner's claim that she was not reappointed to the position of legal office manager because of her race or her age; (4) that petitioner's breach-of-contract claim was barred by her failure to exhaust her administrative remedies through the grievance process established by the 2008 CBA; (5) that petitioner's just-cause employment claim was barred because the MOU was incorporated into the expired CBA; (6) that petitioner's "legitimate expectation of just cause employment claim" had been abandoned or, in the alternative, that the MOU was incapable of creating an expectation of just-cause employment as a matter of law; and (7) that petitioner's claim for intentional infliction of emotional distress was barred because McColgan was acting within the scope of his authority and discretion under MCL 49.31 when he chose not to reappoint petitioner to the position of legal office manager. Respondents also argued that even if res judicata or collateral estoppel did not preclude relitigation of these issues, petitioner was an appointed employee who served at the pleasure of the prosecutor. The ALJ denied the motion.

During the hearing on the merits of petitioner's claims under the Political Freedom Act, respondents argued that the Political Freedom Act was not applicable in this case and that the Act had no impact on the statutory authority of a prosecutor to appoint his or her staff under MCL 49.31. Respondents' attorney argued that McColgan "appointed a legal office manager of his choosing. . . and exercised that right as every other Prosecutor before him has done, including Mr. Thomas, his predecessor Judge Boyd, and his predecessor, Mr. Kaczmarek, each appointed their own legal office manager at the time that they took office in the Prosecutor's Office." He argued that MCL 49.31 provided the authority to appoint, and that MCL 49.35 provided the authority to terminate because it provided that appointees serve "at the pleasure of the prosecutor" and that the term "at the pleasure of" means that the appointee holds the position during the time the prosecutor is in office and has "no rights extensive of that period of time." Respondents' attorney also argued at the hearing that "[t]he issue in this case is whether or not action was taken against Ms. Bauer simply because she engaged in political activities defined by the Act Section 403 sub (d), not whether she was a contract employee or to what degree there was a contract with Miss Bauer. It's irrelevant."

Following the hearing, the ALJ concluded that the position of legal office manager is not "a position listed or subject to" MCL 49.31 and 49.35 of the prosecutors' appointment/tenure statute. The ALJ also found that petitioner was not appointed by Thomas but, rather, that she was hired by Saginaw County. The ALJ found that petitioner's job as legal office manager was "in a 'just cause' union position and could not simply be discharged without any review of her performance." The ALJ found that there was no reason for petitioner's discharge aside from her political activities in support of Thomas and that her discharge therefore violated the Political Freedom Act. In lieu of entering a damages award, the ALJ gave the parties 30 days to explore settlement.

The parties did not settle, and so the ALJ held an additional hearing on damages. The ALJ concluded that petitioner was entitled to back pay plus payment of work-related benefits totaling $144,707. The ALJ also ruled that back pay would continue to accrue until respondents reinstated petitioner. The ALJ awarded attorney fees of nearly $50,000 to petitioner.

Respondents filed a petition for review in the circuit court. Following oral argument, the circuit court concluded that the ALJ had erred as a matter of law. The court first determined that petitioner's contract claims regarding the MOU were part of the union grievance process, which remained pending and should not have been addressed in the administrative proceeding. The court next determined that the sole issue before the ALJ was whether petitioner's rights under the Political Freedom Act were violated. The court said that the issue presented in the case was "the impact, if any, of [the Political Freedom Act] upon the patronage authority granted the prosecutor by MCL 49.31-35." The court found that the ALJ erred by concluding that the Political Freedom Act prevented McColgan from discharging petitioner, and that the position of legal office manager is encompassed within MCL 49.31. Moreover, the court concluded that there is no provision in the Political Freedom Act that restricts the prosecutor's statutory authority to appoint under MCL 49.31. The court reversed the ALJ's decision on the merits, and vacated the ALJ's damages and attorney fee award.

Petitioner now appeals the circuit court's decision by leave granted. In granting leave to appeal, this Court limited petitioner's appeal to "the issues raised in the application and supporting brief." *Bauer v County of Saginaw*, unpublished order of the Court of Appeals, entered December 14, 2018 (Docket No. 344050).

## III. STANDARD OF REVIEW

In *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002), this Court, setting forth the applicable standard of review relative to a circuit court's review of a decision of the board, stated:

> A circuit court's review of an administrative agency's decision is limited to determining whether the decision was contrary to law, was supported by competent, material, and substantial evidence on the whole record, was arbitrary or capricious, was clearly an abuse of discretion, or was otherwise affected by a substantial and material error of law. "Substantial" means evidence that a reasoning mind would accept as sufficient to support a conclusion. Courts should accord due deference to administrative expertise and not invade administrative fact finding by displacing an agency's choice between two reasonably differing views. [Citations omitted.]

This Court reviews a lower court's review of an administrative decision to determine whether the lower court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings, which is essentially a clear-error standard of review." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017) (quotation marks and citation omitted). Substantial evidence means evidence that "a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Id*. (quotation marks and citation omitted). In other words, the circuit court's legal conclusions are reviewed de novo and its factual

findings are reviewed for clear error. *Mericka v Dep't of Community Health*, 283 Mich App 29, 36; 770 NW2d 24 (2009).

## IV. POSITIONS WITHIN THE SCOPE OF MCL 49.31

Petitioner first argues that her employment as a legal office manager in the Saginaw County Prosecutor's Office did not fall within the scope of an appointed "clerical employee" as contemplated by MCL 49.31. Therefore, petitioner argues, she was hired by Saginaw County and did not serve at the pleasure of the Saginaw County Prosecutor. We disagree.

The prosecutors' appointment/tenure statute grants county boards of supervisors the power to authorize county prosecutors to appoint certain staff positions within the prosecutor's office. MCL 49.31. Section 1 of the statute describes the positions to be appointed as "assistant prosecuting attorneys" and "investigating officers, clerks, stenographers and other clerical employees." MCL 49.31. Section 5 of the statute grants prosecutors the authority to discharge appointed employees, as follows: "assistant prosecuting attorneys and other employees appointed by the prosecutor under this act shall hold office during the pleasure of the prosecuting attorney." MCL 49.35. This Court has interpreted the appointment/tenure statute to identify only five types of employees that are subject to the prosecutor's appointment and discharge power: (1) assistant prosecutors; (2) investigating officers; (3) clerks; (4) stenographers; and (5) other clerical employees. *Genesee Co Social Servs Workers Union v Genesee Co*, 199 Mich App 717, 721; 502 NW2d 701 (1993).

Petitioner argues that the legal office manager is not an employee subject to the prosecutor's power of appointment under MCL 49.31 because the position of legal office manager is not specifically named in the statute. She asserts that the ALJ properly found that the legal office manager position does not fall within the scope of "clerks, stenographers and other clerical employees" encompassed by MCL 49.31, and that the circuit court erred by disregarding the ALJ's factual finding that the legal office manager is not a clerical employee. Petitioner also asserts that the circuit court committed legal error by finding the legal office manager to fall within the definition of "other clerical employee."

There are no Michigan appellate decisions that specifically address whether certain positions fit within the statutory terms of "clerks, stenographers, and other clerical employees" in MCL 49.31. The Sixth Circuit Court of Appeals, when ruling on petitioner's federal claims, did not directly address whether the legal office manager position was within the scope of the appointment/tenure statute. The Sixth Circuit did, however, consider the appointment/tenure statute with respect to whether McColgan was immune from petitioner's claim for intentional infliction of emotional distress. *Bauer*, 641 Fed Appx at 520. The Sixth Circuit suggested that the legal office manager position is within the scope of the prosecutor's appointment and discharge authority under the appointment/tenure statute as follows:

> The County Prosecutor has the authority to appoint "assistant prosecuting attorneys," "investigating officers, clerks, stenographers and other clerical employees." MCL § 49.31. These employees serve at the pleasure of the Prosecutor. MCL § 49.35. *It would make no sense for McColgan to be authorized to appoint (§ 49.31) and terminate (§ 49.35) assistant prosecutors, investigators,*

*clerks, stenographers, and other clerical employees—basically everyone in the Prosecutor's Office—while lacking the authority to hire and fire the Legal Office Manager.* As such, McColgan was acting within his executive authority when he terminated Bauer and is entitled to absolute immunity. [*Id.* (emphasis added).]

In contrast, the ALJ in this action concluded that the position of legal office manager is not within the scope of the prosecutors' appointment/tenure statute. The ALJ reasoned that

the Office Manager Position is not a position listed or subject to this statute. This position was represented by the UAW from 2004-2013. . . . Also, contrary to MCL 49.35's requirements, Petitioner was not appointed by Prosecutor Thomas with authorization of Saginaw County. She was hired by the County.

The ALJ's finding that petitioner was hired by the county was apparently based on petitioner's initial notice of employment, which is printed on a County of Saginaw form.

However, the circuit court determined that petitioner's job duties, as found by the ALJ, were clerical or involved supervision of clerical workers, making her position "somewhat of a 'super clerk'." The circuit court accepted the ALJ's factual findings with respect to petitioner's job duties:

Beth ensured adequate attendance was maintained and that the clerical staff were performing their assigned job duties. Beth administered the County's personnel policies and might impose discipline related to attendance violations. Beth was also involved with hiring efforts. She followed applicable collective bargaining agreements and posted job opening[s] for clerical staff as they arose. Beth also estimated the office supplies, witness fees, and other standard costs, based on historic usage, to assist with budgeting. Beth reviewed employee time records and posted the information to the County's payroll system.[3]

---

[3] According to the job description prepared by petitioner in 2000 for the position of legal office manager, the job duties included: supervising the day-to-day operations of the office, purchasing and maintaining office equipment and supplies, developing and administering the prosecutor's $3.7 million budget, maintaining and inputting payroll, having daily contact with courts, the public, and law enforcement agencies, processing and paying bills, and administering and directing extraditions. The job description also indicated that the legal office manager hired, fired, disciplined, and directed support staff, and assisted 23 attorneys with maintaining and preparing files, warrants, and other legal documents. According to Thomas, petitioner's job was to manage the office to the extent of the duties delegated to her. Thomas stated, "I want to be clear that she managed the office and the functions of the office with respect to the public, our public relationship with the Courts, responding to correspondence, kept the clerical staff properly trained and present to do their work. But she did not manage of supervise the attorneys in the office." Petitioner did not have authority to hire or fire staff.

The circuit court found the fact that petitioner had some autonomy and discretion did not change the nature of her duties within the meaning of MCL 49.31. The circuit court concluded that the ALJ made an error of law in concluding that the legal office manager position did not fall within the scope of MCL 49.31. We agree.

This issue—whether the legal office manager is an employee subject to appointment under MCL 49.31—involves a legal question pertaining to statutory interpretation. "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). The most reliable evidence of legislative intent is the plain language of the statute. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. *Gardner v Dep't of Treasury*, 498 Mich 1, 6; 869 NW2d 199 (2015). The court's interpretation of a statute must give effect to every word, phrase, and clause. *South Dearborn*, 502 Mich at 361.

Further, an interpretation that would render any part of the statute surplusage or nugatory must be avoided. *Id*. Common words and phrases are given their plain meaning as determined by the context in which the words are used, and a dictionary may be consulted to determine the meaning of an undefined word or phrase. *Id*. "In construing a legislative enactment, we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co v City of Grand Rapids*, 399 Mich 664, 683; 252 NW2d 747 (1977). Statutes must be construed reasonably, "keeping in mind the purpose of the act, and to avoid absurd results." *Rogers v Wcisel*, 312 Mich App 79, 87; 877 NW2d 169 (2015).

The prosecutors' appointment/tenure statute recognizes the authority of a county prosecutor to appoint certain employees, MCL 49.31, and that these employees serve at the prosecutor's pleasure, MCL 49.35. The terms "clerks" and "clerical employees" are not defined in the statute. Thus, we seek guidance from a dictionary. Merriam-Webster's Collegiate Dictionary (11th ed) defines "clerk" as "an official responsible (as to a government agency) for correspondence, records, and accounts and vested with specified powers or authority (as to issue writs as ordered by a court)," as "one employed to keep records or accounts or to perform general office work," and as "one who works at a sales or service counter." Similarly, Random House

---

Petitioner testified with respect to her job duties. She testified that Thomas and the chief assistant prosecutor were her supervisors, and that she assisted the assistant prosecutors with clerical matters. She would ensure that employees showed up for work and that they were performing the functions of their jobs. If an employee was late, she would give the employee a verbal warning, but "anything more than that, then I would talk to Mr. Thomas about that and he would talk to them." She said that she was not in charge of the budget, but that she would have input on office supplies, witness fees, and extraditions. With respect to payroll, she would "keep the time records of who was there, who wasn't there, whether they used vacation or not" and input the data into the system. She followed rules and guidelines that were in place for her duties.

Webster's College Dictionary (1997) defines "clerk" as "a person employed to keep records, file, type, or do other general office tasks" or "a person who keeps the records and performs the routine business of a court." The dictionary also defines "clerical" as "of, appropriate for, or assigned to an office clerk" or "doing the work of a clerk."

A de novo review of the record shows that the legal office manager's duties were primarily clerical in nature. The legal office manager's additional supervisory functions delegated to her by the prosecutor do not appear to exclude the position from classification as a clerk or clerical employee. Indeed, it is clear to this Court that by including the term "other clerical employees" after specifically delineating certain positions, the Legislature intended to authorize a prosecutor to appoint clerical employees not specifically named. An office manager would fall within this context.

The Sixth Circuit's reasoning, in the context of petitioner's claim for intentional infliction of emotional distress, is also persuasive here. The Sixth Circuit reasoned:

> The County Prosecutor has the authority to appoint "assistant prosecuting attorneys," "investigating officers, clerks, stenographers and other clerical employees." MCL § 49.31. These employees serve at the pleasure of the Prosecutor. MCL § 49.35. It would make no sense for McColgan to be authorized to appoint (§ 49.31) and terminate (§ 49.35) assistant prosecutors, investigators, clerks, stenographers, and other clerical employees—basically everyone in the Prosecutor's Office—while lacking the authority to hire and fire the Legal Office Manager. [*Bauer*, 641 Fed Appx at 520.]

Petitioner also argues that the circuit court erred by impliedly rejecting the ALJ's finding that petitioner was not appointed by Thomas to the position of legal office manager but, rather, was hired by Saginaw County. The ALJ's finding that petitioner was hired by the county was apparently based on petitioner's initial notice of employment, which is printed on a County of Saginaw form. Petitioner contends that the notice of employment, as well as "the testimony of Bauer and Prosecutor Thomas that Bauer was hired by the County and not appointed," weighed in favor of a finding that petitioner was not appointed and, therefore, that the prosecutors' appointment/tenure statute did not apply.

A prosecutor is a co-employer with the county as a result of the prosecutors' appointment/tenure statute. *St Clair Prosecutor v AFSCME, Local 1518*, 425 Mich 204, 225; 388 NW2d 231 (1986). Thomas acknowledged that he appointed petitioner pursuant to an elected prosecutor's statutory authority under MCL 49.31. He also acknowledged that he signed the notice of employment on April 26, 1989. Petitioner testified that she had been appointed by Thomas, and that the legal office manager position was not advertised, that she had no experience working in a prosecutor's office or as an office manager, and that the prosecutor could appoint whomever he wanted pursuant to statute. The ALJ's finding that petitioner was not appointed by Thomas to the legal office manager position was not supported by competent, material, and substantial evidence on the whole record. Petitioner's argument that the record supports the ALJ's finding that petitioner was not appointed is misplaced.

In sum, we conclude that the circuit court properly reasoned that the legal office manager position is within the scope of the prosecutors' appointment/tenure statute and that McColgan had statutory authority to appoint a legal office manager under MCL 49.31.

## V. PETITIONER'S RIGHTS UNDER THE POLITICAL FREEDOM ACT

Next, petitioner argues that a prosecutor's statutory authority to discharge under the prosecutors' appointment/tenure statute is limited by the Political Freedom Act, and she contends that *Council No 11*, 408 Mich 385, "conclusively establishes" that a prosecutor can discharge an employee appointed under MCL 49.31 only for off-duty political activity that is shown to adversely affect job performance. Again, we disagree.

Petitioner's complaint alleged a violation of the Political Freedom Act, MCL 15.401 *et seq*. Section 3 of the Act, MCL 15.403, applies to employees of political subdivisions of the state and defines permissible political activities. Petitioner alleged that "she believed" that McColgan discharged her in retaliation for her political support of Thomas and that he thereby violated her right under MCL 15.403(1)(d) to "engage in other political activities on behalf of a candidate."[4]

McColgan maintained that he had the statutory authority under MCL 49.31 to appoint his legal office manager. The ALJ expressed understanding of McColgan's reluctance to retain petitioner as legal office manager and that McColgan wanted "his own person in this job because of the close working relationship of the two jobs," but found that the legal office manager is not a position subject to the appointment authority of the prosecutor under MCL 49.31 and that the Political Freedom Act prevented petitioner from discharge because of her political activities on behalf of Thomas. The ALJ found that petitioner was discharged because she engaged in political activities on behalf of Thomas and that her discharge was in violation of the Political Freedom Act. Because the ALJ concluded that the prosecutors' appointment/tenure statute did not apply to the position of legal office manager, the ALJ did not address the interplay between the prosecutors' appointment/tenure statute and the Political Freedom Act.

The circuit court concluded that the Political Freedom Act did not alter the appointment and discharge authority granted by the prosecutors' appointment/tenure statute. The circuit court stated in its written opinion:

> The parties conceded that Public Act 69 [the political freedom act] restores to public employees the rights granted all citizens under the First Amendment. Essentially a public employee is protected from disciplinary action resulting from his or her participation in the political process on off-duty time. However, there is nothing contained in Public Act 169 that inoculates a public employee who is otherwise subject to patronage dismissal pursuant to MCL 49.31-35. In other words, Public Act 169 does not divest a newly elected prosecutor from appointing a person loyal

---

[4] An employee who believes his or her statutory rights under the Act were violated may file a complaint in the MAHS. See MCL 15.406(1). If a hearing officer determines that a violation occurred, the office may order job reinstatement, back pay, reinstatement of work-related benefits, and attorney fees. MCL 15.406(1)(a)-(d).

to him to positions enumerated in the [prosecutors' appointment/tenure] statute simply because that employee has been exercising her rights to support the opponent of the new prosecutor.

* * *

[I]f the facts of this case had been different, and Bauer had been discharged during Thomas' term for exercising her rights under the [political freedom act], perhaps the result would be different. However, the successor prosecutor is not precluded from hiring key people for his office whose political affiliation is pertinent to the effective performance of their duties.

Petitioner claimed a violation of MCL 15.403(1)(d), which provides that an employee of a political subdivision may "engage in any other political activity on behalf of a candidate." The Political Freedom Act allows a state employee to engage in partisan political activity except "during those hours when that person is being compensated for the performance of that person's duties as a public employee." *Mich State AFL-CIO v Mich Civil Serv Comm*, 455 Mich 720, 734; 566 NW2d 258, 264 (1997). The Act prohibits the government, as employer, from regulating the off-duty political activity of its employees unless the off-duty political activities of employees interfere with job performance. *Council No 11*, 408 Mich App 385; *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 499-501; 815 NW2d 132 (2012). Petitioner correctly contends that it would be a violation of the Political Freedom Act for a prosecutor to regulate an appointed employee's off-duty political activity that did not affect job performance and then discharge the employee for violating the regulation.

Here, however, petitioner did not allege that she was prohibited from engaging in political activity on behalf of a candidate by regulation or otherwise. Indeed, she admitted that she engaged in political activity on behalf of Thomas without restriction. It therefore seems that MCL 15.403(1)(d) is not implicated by petitioner's factual allegations. Petitioner asserts that MCL 15.403(1)(d) prohibits "retaliation" for engaging in political activity, but, as petitioner recognizes, the statute contains no such language. Petitioner argues that the Political Freedom Act is "meant to provide far more than is made clear by its remedies" and that the Act "is intended to protect public employees from being discharged in retaliation for engaging in off-duty political activity." She asserts that "this very conclusion was unabashedly expressed . . . in *Council No 11*" where our "Supreme Court affirmed a Court of Appeals judgment finding that an employee subject to PA 169 was improperly discharged for engaging in political activity."

However, in *Council No 11*, the employee was discharged for violating a Civil Service Commission rule that the Court found to be invalid because it conflicted with the Political Freedom Act by regulating off-duty political activity. *Council No 11*, 408 Mich at 408-409. Contrary to petitioner's suggestion, the employee in *Council No 11* was not discharged in retaliation for engaging in permissible political activity. In the present case, respondents did not regulate or prohibit petitioner's political activity.

Indeed, at issue in the present case is the narrow issue of whether the Political Freedom Act impacts the prosecutor's statutory authority to appoint employees who shall serve at his pleasure. The parties have cited no Michigan appellate decisions that address this issue.

-12-

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC*, 485 Mich at 76. "If two statutes conflict, then the specific prevails as an exception to the general." *Id*. "However, if two statutes lend themselves to a construction which harmonizes their meanings and avoids conflicts, that construction should control." *Id*.

The Political Freedom Act was enacted to permit civil service employees and employees of political subdivisions of the state to engage in certain political activities. *Council No 11, AFSCME, AFL-CIO v Mich Civil Serv Comm*, 87 Mich App 420, 426; 274 NW2d 804 (1978). The Act specifies in detail the permitted activities a public employee may engage in. MCL 15.402, 15.403. However, even the permitted activities may not be actively engaged in during those hours that the person is being compensated for the performance of his or her duties as a public employee. MCL 15.404. Public employers may not regulate the off-duty political activity of their employees in a way that preemptively conflicts with the Act, although the employer may regulate the off-duty political activities of public employees when those activities interfere with job performance. *Mich State AFL-CIO*, 455 Mich at 733; *Central Mich Univ Trustees*, 295 Mich App at 501. There is no private cause of action for enforcement of the Act, *Forster v Delton School Dist*, 176 Mich App 582, 586; 440 NW2d 421 (1989), but there is a statutory procedure for complaints by employees of state political subdivisions for violations of their rights under the Act. MCL 15.406(1). Remedies provided by the Act include the issuance of back pay, reinstatement of employment and of all work-related benefits, and attorney fees. MCL 15.406(1)(a) to (d).

The prosecutors' appointment/tenure statute authorizes the appointment by the county prosecuting attorney of "as many assistant prosecuting attorneys as said board of supervisors shall deem necessary," and "authorize[s] the appointment by said prosecuting attorney, of such investigating officers, clerks, stenographers and other clerical employees as said board of supervisors shall deem necessary." MCL 49.31. "Said assistant prosecuting attorneys and other employees appointed by said prosecuting attorney under this act shall hold office during the pleasure of the prosecuting attorney." MCL 49.35.

In reading the two statutes together, there is no provision in the Political Freedom Act that restricts the prosecutor's statutory authority under the prosecutors' appointment/tenure statute. Under the Political Freedom Act, the Legislature permitted civil service employees and employees of political subdivisions of the state to engage in certain political activities. In the prosecutors' appointment/tenure statute, the Legislature specifically endowed the prosecutor with the authority to appoint, MCL 49.31, and the power to remove appointed employees at-will, MCL 49.35. There is nothing contained within the Political Freedom Act that divests a newly elected prosecutor of this authority. The Act has no language applicable to the prosecutor's appointment authority. And as respondents observe, petitioner's interpretation of the Political Freedom Act would lead to the "absurd result that every newly elected official would be bound to reappoint his predecessor[']s appointees, if they engaged in political activity in support of his predecessor. No elected official could ever terminate an appointee who was politically active in support of a political opponent." The circuit properly concluded that the Political Freedom Act is not in conflict with the prosecutors' appointment/tenure statute and that McGolgan's appointment of a legal office manager did not violate petitioner's rights under the Political Freedom Act.

## VI. COLLATERAL ESTOPPEL

Finally, petitioner argues that the circuit court committed error requiring reversal by concluding that the doctrine of collateral estoppel barred consideration of the MOU. However, because petitioner's application for leave to appeal did not raise this argument, it is not properly before this Court. See *Bauer v Saginaw Co*, unpublished order of the Court of Appeals, entered December 14, 2018 (Docket No. 344050), where this Court limited petitioner's appeal to "the issues raised in the application and supporting brief." We therefore decline to address it.

Affirmed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien